UNITED STATES DISTRICT COURT          "O"
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Thomas Beck | Erica Bianco |
| | Richard Rodriguez-Campbell |

**Proceedings:**   **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(filed May 24, 2013) [46]

## I.   INTRODUCTION

On October 12, 2010, plaintiffs Cristina Gutierrez, Hector Gutierrez Sr., and Hector Gutierrez Jr. filed the complaint in the instant action against defendants County of Los Angeles (the "County"); Deputy Reyes # 480735 ("Reyes"), individually and as a peace officer; Deputy D. Payne #470624 ("Payne"), individually and as a peace officer; Steve Suzuki #259461 ("Suzuki"); and Captain Matt Dendo ("Dendo"). The gravamen of plaintiffs' complaint is that defendant officers entered their residence under the guise of a probation search related to Alvaro Gutierrez, the Gutierrez's son and brother of Hector Jr., and removed jewelry and firearms with no reason to do so.

On June 14, 2011, the Court granted in part and denied in part defendants' motions to dismiss, for a more definite statement, and to strike plaintiffs' complaint. Thereafter, plaintiffs filed the operative First Amended Complaint ("FAC") on July 14, 2011. Dkt. No. 27. Plaintiffs assert claims for: (1) violation of plaintiffs' First, Fourth, and Fourteenth Amendment rights, under 42 U.S.C. § 1983; (2) Monell liability for maintaining an unconstitutional policy or custom; (3) false arrest; (4) conversion; (5) conspiracy; (6) intentional infliction of emotional distress ("IIED"); and (7) violation of statutory duties. On May 20, 2012, the parties stipulated to dismiss defendant Suzuki with prejudice.

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

On May 24, 2013, defendants filed their motion for summary judgment as to all claims asserted against all defendants. Plaintiffs opposed the motion on June 30, 2013, and defendants replied on July 8, 2013. The Court held a hearing on July 22, 2013. After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiffs Christina and Hector Sr. reside with their son Hector Jr. at 1015 Rosewood Avenue in the City of Inglewood ("Rosewood Property").[1] Hector Jr.'s apartment is separate and unattached at the back of the main house. Prior to July 5, 2009, Alvaro Gutierrez, another of the Gutierrez's sons, also resided at this address. On July 5, 2009, however, Alvaro's parents informed him that he was no longer welcome at their residence, and he had allegedly not been to the house since that time before the incident.

### A.    The Traffic Stop

In the afternoon of October 30, 2009, non-party Alvaro was driving his Chevy Lumina near his parents' house when he was stopped by Deputies Payne and Reyes. According to the deputies, Alvaro was initially stopped for a broken tail light and tinted front windows; Alvaro disputes the truth of these assertions. After approaching Alvaro's car, the deputies contend that they smelled unburnt marijuana in the vehicle and also "learned" that Alvaro was on probation and subject to a probation compliance search. They further confirmed that Alvaro lived at 1015 Rosewood Avenue and detained him before heading to the residence to conduct the search. Payne testifies that he initially stayed behind with Alvaro while Reyes headed to the residence.

Alvaro, on the other hand, testifies that there was no marijuana scent in his vehicle and that there were no containers that previously contained marijuana in the car, as the deputies later wrote in their report. He also testifies that the deputies never asked him if he was on probation or told him why he was being stopped. During the stop, Hector Jr.

---

[1] For the sake of clarity, the Court will use the first names of plaintiffs to this litigation.

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|----------|-----------------------|------|---------------|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

and Michael Rappuhn, another relative, came over to the location of the deputies to observe what was transpiring. They saw Alvaro handcuffed in the back of the deputies' car while the deputies searched his trunk.

During the search, Alvaro testifies that the deputies found his driver's license and asked him if he lived at the address stated on the license, 1015 Rosewood Avenue. This address is also listed on the document setting forth Alvaro's probation terms. Defs.' Ex. A (Probation and Sentence Hearing, November 17, 2008). In particular, these terms required Alvaro to "[s]ubmit person and property to search and seizure at any time of day or night by any law enforcement officer or by probation officer with or without a warrant." Id. Alvaro replied that he lived in Santa Monica and spent some nights in Hawthorne, and that he did not live at the Rosewood address. Shortly thereafter, according to Hector Jr. and Rappuhn, a patrol car arrived with deputies Aaron Shintaku and David Fernandez. Reyes got into this car and proceeded to the Gutierrezes' address; Hector Jr. followed on his bicycle.

**B.      The Search at the Rosewood Property**

The deputies contend that they then notified additional units, including Sergeant Waldie, before entering the residence to conduct their search. Hector Jr. had returned home by this time and was in the main house; Cristina was at home resting in bed in her room, which is separate from Hector Sr.'s, who was not present at that time.

According to plaintiffs, however, Reyes came on to the property before Waldie arrived, damaging the gate across plaintiffs' driveway in the process. He and Deputy Fernandez  also entered Hector Jr.'s separate apartment without Hector Jr.'s authority or permission. Deputy Reyes admits to searching this separate unit as part of a "protective sweep" of the premises, but does not state when he did so.

After searching this unit, Reyes and Deputy Shintaku went to the back door of the main house and opened the metal security door. There, Hector Jr. asked the deputies what they were doing at the residence, at which time Reyes informed him that they were searching the whole property pursuant to his brother's probationary status. Hector Jr.

UNITED STATES DISTRICT COURT     "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

told the deputies that Alvaro no longer lived at the house and that Cristina said that the deputies could not come inside.

However, Deputy Reyes allegedly put his foot inside the doorway to the house and demanded that Hector Jr. raise his mother from bed. After repeating this demand a second time, Hector Jr. went to get his mother out of bed, and Reyes, Shintaku, and Fernandez entered the house.

At this point, Reyes asked Cristina in Spanish where her money and jewelry were located; Hector Jr. protested, asking why the deputies needed to know this information. Reyes did not answer and ordered Hector Jr. and his mother to the front of the house. Reyes also asked if there were any weapons in the house, to which Hector Jr. replied that there were two, both belonging to his father. According to defendants, these are standard questions for a probation search.

As they passed through the house, Reyes asked if a particular room belonged to Alvaro; Hector Jr. told Reyes that it used to belong to him. The deputies allegedly seized cash, drugs, and ammunition for a .357 Magnum handgun from this room.

Thereafter, Reyes again inquired as to the presence of jewelry and money in the house, and Hector Jr. again objected to Reyes's inquiry. After further back and forth, Reyes allegedly grabbed Hector Jr. and locked him into the back of Deputy Payne's patrol car alongside Alvaro. Deputy Reyes and Payne testify that they were accommodating Hector Jr.'s request to speak to Alvaro, a request that Hector Jr. denies making. The deputies also testify that they then found an outstanding "no bail" warrant for Hector Jr. and therefore decided to detain him. Hector Jr. contends that he demanded to be let go, but that Deputy Shintaku refused his demands.

Cristina was then escorted to her bedroom by Deputy Reyes, where Fernandez and Payne were waiting. At this point, Cristina retrieved a rifle from the closet in her room for the deputies and was sent back to the living room. She was then escorted between the bedroom and the living room multiple times to retrieve jewelry and money, leaving the deputies in the bedroom. She asked to call her husband, but Reyes allegedly informed her that she could not.

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|----------|----------------------|------|---------------|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

After providing a recorded interview to Sergeant Waldie while seated in the living room, Cristina was allowed to call her husband at 7:29 p.m, in order to assist the deputies with locating his handgun.  As she was on the phone with her husband, she testifies that she observed Reyes carrying two shoe boxes from the bedroom covered by a dark-colored t-shirt.  Cristina stored some of her jewelry in a shoe box in her bedroom.  Rappuhn and others allegedly witnessed Reyes placing these boxes into a hamper, then into the back of his patrol car.  Deputy Payne, on the other hand, claims that he dumped the contents of the hamper into his patrol car trunk and returned the hamper to the Gutierrez home.

Reyes then returned to the living room without the aforementioned items and again asked Cristina where the second gun was.  Reyes retrieved this gun from Hector Sr.'s room, allegedly damaging a locked gun case in the process, and placed this into the patrol car along with the other seized items.  At the end of this encounter, Hector Jr. was released from the patrol car, after allegedly being detained for more than two hours.  The deputies contend that although he did not have an outstanding "no bail" warrant, he did have an outstanding out of county misdemeanor warrant for contempt of court.  Hector Jr. denies that any such warrant exists.

### C.    Post-Search Events

Plaintiffs contend that the deputies failed to leave any receipts for any of the items that were taken from their home.  Shortly after the search, they Cristina allegedly discovered that her jewelry shoe box and other jewelry that she stored in her dresser was missing.

Thereafter, plaintiffs unsuccessfully attempted to discover the status of their allegedly missing property at the Lennox sheriffs' station.  They maintain that the sheriffs department refused to actually investigate their complaint, and the deputies in question testified that they had no recollection of actually speaking to the Lieutenant at the sheriffs' station tasked with investigating plaintiffs' complaint.  On August 10, 2010, plaintiffs obtained an order from the Superior Court in Alvaro's then-pending criminal case directing the sheriffs department to return their property to them.  Pls.' Ex. L.  The list of property included Cristina's jewelry, the rifle and .357 Magnum handgun,

UNITED STATES DISTRICT COURT          "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

ammunition, a shirt, and a mesh clothes hamper.  Id.  Even with this order, however, plaintiffs maintain that they had great difficulty obtaining their property from the sheriffs department, and plaintiffs have not obtained their ammunition, jewelry, clothing, or laundry hamper to date.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper

UNITED STATES DISTRICT COURT          "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|----------|----------------------|------|---------------|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

In their opposition, plaintiffs expressly abandon their second claim for a Monell violation and seventh claim for torts in essence.  Judgment for defendants is appropriate on these claims.

### A.     Plaintiffs' Claims for Violations of Section 1983

Plaintiffs claim that the deputies violated their First, Fourth, and Fourteenth Amendment rights during the incident in question.  Defendants contend that qualified immunity bars plaintiffs' constitutional claims.  Because the qualified immunity inquiry incorporates the question of whether a plaintiff can prove a claimed constitutional deprivation at trial, the Court begins with this framework.

"Qualified immunity protects officers from liability for civil damages where their alleged unconstitutional conduct does not violate a clearly established right."  Ford v. City of Yakima, 706 F.3d 1188, 1192 (9th Cir. 2013).  The deputies here are entitled to qualified immunity from plaintiffs' constitutional claims "unless (1) facts viewed in the light most favorable to the injured party show that the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct."  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009)).

### 1.     First Amendment

Even while exercising their lawful duties, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  City of Houston v. Hill, 482 U.S. 451, 461 (1987).  Indeed, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."  Id. at 462–63.  The question is whether the deputies' actions "would chill or silence a person

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

of ordinary firmness from future First Amendment activities." Lacey v. Maricopa Cnty., 693 F.3d 896, 916 (9th Cir. 2012) (en banc) (quotation omitted). To succeed on this claim, plaintiffs must also prove at trial that "the officers' desire to chill his speech was a but-for cause of their allegedly unlawful conduct." Ford, 706 F.3d at 1193.

Here, Hector Jr.'s First Amendment claim is premised upon his alleged detention, without justification, by the deputies during the search of the Gutierrez residence. He contends that the deputies decided to detain him as a result of his repeated challenges to Reyes's demands for his mother's jewelry and money during the search of the residence. The deputies, on the other hand, contend that they took him to the patrol car initially to speak with his brother, and then detained him after discovering an out of county warrant in his name. In the deputies view, this warrant provided them with probable cause to lawfully detain him, negating any claim.

Viewing the facts in a light most favorable to plaintiffs, the Court finds that disputes of material fact remain as to plaintiff's claim for violation of the First Amendment, as Hector Jr. could prove such a claim at trial. First, the Ninth Circuit has repeatedly recognized that "retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity." Ford, 706 F.3d at 1193 (citing Lacey, 693 F.3d at 916; Skoog v. Cnty. of Clackamas, 469 F.3d 1221, 1231 (9th Cir. 2006)). A rational jury could find that the deputies' detention of Hector Jr. during the search of the residence, allegedly in retaliation for his protestations about the deputies' conduct at his residence, would deter or chill the future exercise of plaintiff's First Amendment rights.

Second, based on the evidence before the Court, Hector Jr. could prove to a rational jury that his exercise of his First Amendment rights was the but-for cause of his detention. Even if the deputies could have detained plaintiff on the basis of an outstanding warrant as they contend, it is up to the jury to decide whether defendants in fact acted on the basis of this warrant, or if instead, their alleged retaliatory motive was the but-for cause of their conduct. See Ford, 706 F.3d at 1194–95 (reversing grant of summary judgment for defendants where "the officers' alleged conduct violated [plaintiff's] right to be free from police action motivated by retaliatory animus, even if probable cause existed for that action"); Dietrich v. John Ascuaga's Nugget, 548 F.3d

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

892, 901 (9th Cir. 2008) (citing Hartman v. Moore, 547 U.S. 250, 265-66 (2006) (noting that the presence of probable cause "is not dispositive," even if it "has high probative force"). The inconsistent explanations in the record as to why Hector Jr. came to be in the back seat of a patrol car during the search, and when any warrant was actually discovered, present genuine disputes of material fact to be resolved at trial.

Because the facts viewed in the light most favorable raise a disputed issue of fact as to whether the deputies may have violated Hector Jr.'s First Amendment rights, the first requirement of Saucier is met. The question that remains is whether the deputies are entitled to qualified immunity because plaintiff's constitutional right was not clearly established.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quotation omitted). "The right must not be stated as a broad general proposition, but rather must be defined with enough specificity to put a reasonable officer on notice that his conduct is unlawful." Ford, 706 F.3d 1188, 1195 (9th Cir. 2013) (citing Reichle v. Howards, — U.S. —, 132 S. Ct. 2088, 2093–94 (2012)). "[T]he relevant inquiry is whether the state of the law at the time of the official conduct complained of was such as to give the defendants 'fair warning' that their conduct was unconstitutional—that a fair application of well-established legal principles would warrant such a conclusion." Young v. Cnty. of Los Angeles, 655 F.3d 1156, 1167 (9th Cir. 2011).

Taking the facts in the light most favorable to plaintiffs, the Court concludes that defendants are not entitled to qualified immunity on Hector Jr.'s First Amendment claim. At least since 1990, police officers have been on notice that "it is unlawful to use their authority to retaliate against individuals for their protected speech." Ford, 706 F.3d at 1195 (citing Duran v. City of Douglas, 904 F.2d 1372 (9th Cir. 1990)); see also Beck v. City of Upland, 527 F.3d 853, 871 (9th Cir. 2008)). Subsequently, the Ninth Circuit's 2006 decision in Skoog established that even where probable cause justifies a search and seizure of an individual, an officer's actions may nonetheless be unlawful if the officer's primary motivation was to retaliate against an individual's exercise of his First Amendment rights. 469 F.2d at 1235. As the Ninth Circuit later held, "Duran clearly

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

established that police officers may not use their authority to punish an individual for exercising his First Amendment rights, while Skoog clearly established that a police action motivated by retaliatory animus was unlawful, even if probable cause existed for that action." Ford, 706 F.3d at 1196.

Based on the foregoing, a reasonable officer would have understood that he did not have the authority to detain an individual for over two hours in a patrol car in retaliation for that individual's First Amendment speech, even if the officer *could* have permissibly detained such individual pursuant to a valid warrant or incident to a search of the premises. See Sanchez v. Canales, 574 F.3d 1169, 1174 (9th Cir. 2009) (finding detention of a resident during a search of a parole's presumptive residence to be permissible), overruled on other grounds by United States v. King, 687 F.3d 1189 (9th Cir. 2012) (en banc). It will be for the jury to decide whether the officers were motivated by a desire to retaliate for Hector Jr.'s protected speech or whether the officers acted pursuant to a valid, outstanding warrant. Accordingly, the Court finds that defendants are not entitled to summary judgment on the basis of qualified immunity from suit or judgment on the merits of plaintiff's First Amendment claim.

### 2. Fourth Amendment Claims

Plaintiffs challenge the constitutionality of the search and seizure at their residence by contending that all of the following were violations of their Fourth Amendment rights: (1) the stop, search, and seizure of Alvaro and his car; (2) the initial entry and search on Rosewood; (3) the search of Hector Jr.'s separate apartment; and (4) the search of the Cristina and Hector Sr.'s separate bedrooms.

### a.    The Search of Alvaro's Car

At the outset, the Court finds that plaintiffs lack standing to challenge the legality of the deputies' traffic stop of Alvaro, who is not a plaintiff to this action. Because "Fourth Amendment rights are personal rights which may not be vicariously asserted . . . the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 369 (9th Cir. 1998) (citations and alterations omitted). To establish standing to

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|----------|------------------------|------|---------------|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

challenge the search of Alvaro, therefore, "plaintiffs must prove that they had a legitimate expectation of privacy in the area searched or the things seized." <u>Martinez v. Nygaard</u>, 831 F.2d 822, 825 (9th Cir. 1987). Plaintiffs have not done so here. Cristina, Hector Jr., Hector Sr. have no personal interest in Alvaro's personal right to be free from unlawful search and seizure, nor any legitimate expectation of privacy in the vehicle in which he was stopped, which belonged solely to Alvaro. Accordingly, the Court may not consider plaintiffs' challenge to the legality of the deputies traffic stop of Alvaro.[2]

### b.    Initial Entry to the Rosewood Property

The Court next considers the propriety of the deputies' search of plaintiffs' residence. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." <u>Brigham City, Utah v. Stuart</u>, 547 U.S. 398, 403 (2006) (quotation marks omitted). This is precisely the situation presented here, as the deputies conducted a warrantless search of plaintiffs' residence, allegedly without their permission to do so.

The question that remains is whether Alvaro's status as a probationer permitted the deputies to conduct a warrantless search at plaintiffs' residence. Because of recent evolution in the case law in this area, the Court finds it appropriate to address the issue of qualified immunity first, which looks to the clearly established law at the time of the incident in question. <u>Pearson</u>, 555 U.S. at 236. As with the First Amendment question addressed above, the Court takes the facts in the light most favorable to plaintiffs.

---

[2] Plaintiffs' comparison to <u>Liston v. County of Riverside</u> is unpersuasive. 120 F.3d 965 (9th Cir. 1997). There, the court determined that if a plaintiff made a "substantial showing" that an officer acted in reckless disregard for the truth in obtaining a warrant, and that the warrant would not have issued but for the offending conduct, a plaintiff may maintain a Fourth Amendment claim against that officer. <u>Id.</u> at 788–89. Unlike <u>Liston</u>, this case does not involve a warrant permitting a search of plaintiffs' residence, but a search conducted pursuant to the probationary status of a third-party not before the Court. <u>Liston</u> and its progeny simply do not apply to the facts at hand.

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
| --- | --- | --- | --- |
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

It is undisputed that as part of Alvaro's probation, he agreed to "submit person and property to search or seizure at any time of the day or night by any law enforcement officer or by probation officer with or without a warrant." Defs.' Ex. A. The California Supreme Court has interpreted this precise language to permit a search of a probationer's residence not only without a warrant, but also "without reasonable cause," so long as the search is not "undertaken for harassment or . . . for arbitrary or capricious reasons." People v. Bravo, 43 Cal. 3d 600, 610 (1987).[3] The Ninth Circuit refers to this as a "suspicionless search condition." United States v. King, 711 F.3d 986, 988, 988 n. 1 (9th Cir. 2013).

At the time of the incident, the Ninth Circuit had not yet definitively held whether or not suspicionless *probation* searches were permissible; until the en banc United States v. King decision in 2012, where the Ninth Circuit treated probation and parol as the same. 687 F.3d 1189 (9th Cir. 2012) (per curiam) (en banc). Therefore, because the Ninth Circuit treated these searches in the same way, the Supreme Court's decision in Samson v. California, 547 U.S. 843, 852 (2006)—which provides that no individual suspicion is required for a parol search to be permissible under the Fourth Amendment—applied equally to probation searches.[4] These decisions rely not on the doctrine of consent, but on an application of the objective reasonableness test, which

---

[3] The interpretation of a probation condition issued by a California judge is a matter of state law; only after determining the scope of a condition does federal law control the question of whether the condition may be constitutionally applied in a particular circumstance. See U.S. v. King, 711 F.3d 986, 988 n. 1 (9th Cir. 2013).

[4] In any event, the Ninth Circuit ultimately confirmed in 2013 that because a probationer's acceptance of a search condition "significantly diminishe[s] [that individual's] reasonable expectation of privacy," the Fourth Amendment permits a suspicionless search of that individual's residence. King, 711 F.3d at 990 (quoting Samson v. California, 547 U.S. 843, 852 (2006)). Before this decision, the Supreme Court had upheld a search that the police conducted of a probationer's residence on the basis of reasonable suspicion, but declined to address whether a "suspicionless" search of a probationer would pass constitutional muster. United States v. Knights, 534 U.S. 112, 114 (2001).

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

balances "the degree of intrusion on the [individual's] expectation of privacy against the degree to which the government needed to conduct the search for the promotion of legitimate governmental interests." King, 711 F.3d at 989.

Of course, the foregoing applies only to searches of the probationer's actual residence or personal property—not to a residence belonging to third-parties. To protect the rights of non-probationer third-parties, at the time of this incident, the Ninth Circuit had squarely held that "before conducting a warrantless search pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched." Motley v. Parks, 432 F.3d 1072, 1080 (9th Cir. 2005) (en banc).[5] Therefore, it was clearly established in the Ninth Circuit that law enforcement officers had to have probable cause that an individual subject to a search condition actually resided at the residence sought to be searched. See Cuevas v. De Roco, 531 F.3d 726, 732 (9th Cir. 2008). This requirement is essential to adequately protect the interests of third-parties, who have not otherwise consented to such a search condition. Motley, 432 F.3d at 1080.

This probable cause standard has been described as "relatively stringent"; i.e., "the facts known to the officers at the time of the search must have been sufficient to support a belief, in 'a man of reasonable caution' that [Alvaro] lived at [1015 Rosewood Avenue]." United States v. Howard, 447 F.3d 1257, 1262 (9th Cir. 2006). However, [w]here an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous." Motley, 432 F.3d at 1082. In Motley and its progeny, the Ninth Circuit has cataloged some of the circumstances that do and do not give rise to sufficient probable cause.

The officers in Motley conducted a warrantless search of an apartment belonging to the parolee's girlfriend, where the apartment was in her name and she paid the rent and all bills associated with the apartment. 432 F.3d at 1075. There, the officers had

---

[5] This decision was subsequently overruled in part by the en banc King decision, but only to the extent that Motley held that parol and probation-based searches are equal in the eyes of the Fourth Amendment.

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

purposefully gathered all available information as to the parolee's whereabouts a month before the search, and one of the officer's had previously had contact with the parolee at the address in question.  Furthermore, on at least one prior occasion, the parolee and his grandmother confirmed that he lived at the girlfriend's address.  Id. at 1081.

When the officers actually conducted the search in Motley, the girlfriend repeatedly informed the officers that the parolee did not live there, and that in fact, he was in state custody at the time.  Refusing to take heed of her contentions, the officers entered the apartment to conduct their search.  The parolee was not home, and thereafter, the girlfriend filed suit.  On appeal, the Ninth Circuit held that the probable cause requirement was satisfied.  Relevant here, the court concluded that once officers have probable cause to believe that they are at a probationer's residence, based on objective evidence, "they [are] entitled to maintain that belief until presented with convincing evidence that the information they had relied upon was incorrect."  Id. at 1082.  Therefore, the girlfriend's statement that the parolee did not live at that address, "coming from a less-than-disinterested source, did not undermine the information the officers previously had received from their advance briefing."  Id.

Motley stands in contrast to Cuevas v. De Roco, where the officers lacked the probable cause necessary to believe that a parolee resided at the address in question.  531 F.3d 726 (9th Cir. 2008).  In Cuevas, the police searched a residence in Diamond Springs that had been listed as the "emergency contact address" on a parolee's parol form in July 2003, seven months before the search in question.  Multiple other forms indicated that the parolee did not, in fact, reside at that address, as he the parolee had more recently disclosed his address as "Homeless" or at a residence in Placerville.  Id. at 729.  When police conducted the search, startled residents of the home—who had recently bought the house in question from its previous owner—called 911 and struggled with the police before the misunderstanding was cleared up.  Id. at 730–31.

Applying Motley and viewing the facts in the light most favorable to plaintiffs, the court found that the officers lacked probable cause to believe that the parolee resided at the location of their search, as the officers understood this address to be only an "emergency contact address," and even had a "face sheet" in their possession stating that the parolee in fact had most recently lived in Placerville.  The officers further testified

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

that they merely "assumed" that this was the parolee's residence "at some time." Id. at 732. Because the information suggesting that the parolee might have resided at the Diamond Springs address "was several years old, uncorroborated by available sources, and contradicted by two more recent pieces of information," the court found that no probable cause existed, and that the officers were not entitled to qualified immunity. Id. at 733.

Cuevas also addressed four circumstances that the Ninth Circuit had previously identified as giving rise to probable cause to search a residence suspected of belonging to a probationer:

> First, in each of these cases the parolee did not appear to be residing at any address other than the one searched. In three of these four cases, the parolee had reported a different address, but officers had good reason to believe that he was not actually residing at the reported address.

> Second, in each of these four cases, the officers had directly observed something that gave them good reason to suspect that the parolee was using his unreported residence as his home base.

> Third, in each of these cases the parolee had a key to the residence in question.

> Lastly, in two of these cases, either the parolee's co-resident or the parolee himself identified the residence in question as that of the parolee.

Id. at 734 (quoting United States v. Howard, 447 F.3d 1257, 1262 (9th Cir. 2006)) (alterations omitted).

Applying these cases and the circumstances identified in Howard, the Court concludes that the officers reasonably believed they had probable cause to search the Rosewood Property, entitling them to qualified immunity for the fact of searching the residence. The officers had a driver's license, as well as a probation report from less than a year before the search, indicating that this was Alvaro's residence. See Pls.' Ex. G at 6 (Police Report from October 30, 2009, indicating that the deputies "confirmed via

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

WPS/CLETS that S/Gutierrez was on probation for marijuana"). Moreover, Alvaro was stopped in close proximity to the residence. These facts provide the officers with a strong basis for which to believe that Alvaro resided at this address. It is unclear whether Alvaro still had a key to the residence, and it is disputed whether Alvaro claimed this was in fact his residence. But these considerations are less relevant where, as here, the deputies had an objective basis to believe that the probationer resided at the address listed in his probation report. And unlike in Motley, the deputies definitively knew that Alvaro was not presently incarcerated, since they had personally detained him close to his reported residence.

Even if plaintiffs and Alvaro informed the deputies that he no longer lived at this address, Motley holds that these verbal protestations are insufficient to amount to the "convincing evidence" necessary to overcome the officers' reasonable belief that they had probable cause to search the residence. 432 F.3d at 1082. Because the deputies obtained no information that would lead them to believe that Alvaro did not reside at plaintiffs' address, other than that allegedly provided by "less-than-disinterested source[s]," the Court concludes that the deputies did not violate clearly established law in finding that they had probable cause to believe that Alvaro resided on Rosewood Avenue. Id.

   c. **Search of Hector Jr.'s Separate Apartment and Cristina and Hector Sr.'s Bedrooms**

Further inquiry is necessary to determine if the deputies permissibly entered into Hector Jr.'s separate apartment at the Rosewood Property, as he alleges. This apartment is detached from the main house and has a separate, locked entry. Hector Jr. Decl. ¶ 7. Plaintiffs further testify that no one ever consented to the deputies' search of this unit.

The parties have not directed the Court to any case confronting the precise circumstances presented here, where the officers have a single address stemming from a probation report that leads to two, distinct units on the property. However, some concrete principles were clearly established at the time of the search in question. As with other searches, the scope of any probation search is limited to "those areas of a residence over which the probationer is believed to exercise complete or joint authority."

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
| --- | --- | --- | --- |
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

People v. Woods, 21 Cal. 4th 668, 681 (1999) (citing United States v. Matlock, 415 U.S. 164 n. 7 (1974)).  In addition to this limitation on the places in or at a probationer's residence that law enforcement may enter without a warrant, officers must have "'reasonable suspicion' to conclude that the probationer owns, controls, or possesses a particular item within the probationer's residence in order to search [or seize] that item." United States v. Bolivar, 670 F.3d 1091, 1096 (9th Cir. 2012) (citing United States v. Davis, 932 F.2d 752, 758 (9th Cir. 1991)).

It does not appear that the deputies had probable cause to search this separate unit as part of the probation search related to Alvaro, at least without any further inquiry as to whether this unit in fact belonged to Alvaro.  However, the Court need not reach this question here, as defendants' search of this unit was justified under the "protective sweep" doctrine.  "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.  It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Maryland v. Buie, 494 U.S. 325, 327 (1990).  Importantly, the sweep must last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Id. at 336–37; see Cuevas, 531 F.3d at 735 (finding that opening of a drawer in a residence during a putative parol search could not be justified under the protective sweep doctrine).[6]  All the evidence in the record indicates that the deputies were only in Hector Jr.'s separate apartment for a short duration of time, which is consistent with the purposes of a protective sweep.  Plaintiffs have not identified any evidence in the record that the deputies had to force their way into the unit, or that anything was unnecessarily disturbed inside.  Under these circumstances, the deputies' search is protected under the protective sweep doctrine.

The Court turns next to the search of Cristina and Hector Sr.'s separate bedrooms.  According to plaintiffs, these bedrooms have separate locks on each door, and Alvaro never had access to these rooms even when he actually lived at the Rosewood Property.  Moreover, Cristina testifies that during the search, she indicated which room belonged to

---

[6] These limits were also clearly established at the time of the search in question. See Cuevas, 531 F.3d at 736 (citing Buie, 494 U.S. at 327).

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

Alvaro, but that the deputies insisted on searching the other rooms in the house as well for the presence of any money, jewelry, or firearms.  Cristina Decl. ¶¶ 8–10.

Under these circumstances, the Court concludes that there are disputed issues of fact as to whether the officers could have permissibly entered the separate bedrooms of Cristina and Hector Sr.  While the officers likely did not know which room formerly belonged to Alvaro upon entering the residence, or whether or not Alvaro had access to these bedrooms, the officers needed at least a "reasonable suspicion" that these bedrooms were under the complete or joint control of Alvaro before searching them further.  Bolivar, 670 F.3d at 1096.  As the Ninth Circuit has noted in an analogous context, "in some circumstances, questions of ownership, possession, or control may rise to a level requiring law enforcement officers to inquire into ownership, possession, or control in order to develop the reasonable suspicion necessary to justify the search."  United States v. Davis, 932 F.2d 752, 760 (9th Cir. 1991).  While the deputies testify that they discovered .357 caliber ammunition in Alvaro's room during their initial search, justifying a further search, this fact remains subject to dispute.  Viewing the evidence in the light most favorable to plaintiffs, there is a disputed issue of material fact as to whether the deputies had reason to believe that Alvaro exercised the sort of joint control necessary to give the deputies the right to search these rooms in the house without further justification.

Nor can these searches of the parents' bedrooms be justified under the protective sweep exception to the warrant requirement. According to plaintiffs' account, any "sweep" beyond Alvaro's former room lasted far longer than was necessary to secure the premises to protect the safety of the deputies and others; the deputies made numerous trips between Hector Sr. and Cristina's bedrooms and the living room over an extended period of time.  Therefore, defendants' motion for summary judgment as to plaintiffs' Fourth Amendment claims arising out of the search of their bedrooms must be denied.  Viewing the disputed material facts in plaintiffs' favor, a jury could find that the deputies' search of the bedrooms was not a lawful protective sweep.[7]

---

[7] Because the Court finds that disputed issues of material fact preclude judgment for defendants on plaintiffs' claims based on the search of Cristina and Hector Sr.'s bedrooms, judgment is also inappropriate on plaintiffs' claims for the seizure of the rifle

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

### 3.   Fourteenth Amendment Claims

Plaintiffs' claims for violations of the Fourteenth Amendment are based on the deputies alleged taking of Cristina's jewelry during the search of plaintiffs' residence, as well as the allegedly lengthy delay on the part of the deputies in returning Hector Sr.'s rifles to him.

Under the Fourteenth Amendment, no state may "deprive any person of . . . property, without due process of law."  As to the alleged taking of Cristina's jewelry, plaintiffs allege that this property was taken in the absence of any process, as it was not taken in accordance with a valid warrant or an exception to the warrant requirement. The Court concludes that disputed issues of material fact preclude judgment in defendants' favor on this claim.  Contrary to defendants' assertions, plaintiffs offer evidence that Cristina had such jewelry, and that she discovered it missing shortly after the search.  In addition, numerous witnesses testify to a "shoebox" being placed in the deputies' car which allegedly resembled one that contained some of Cristina's jewelry.

As to plaintiffs' claims related to the firearms, the Ninth Circuit has recognized that California's post-deprivation remedy for property that is lawfully seized as part of a search is constitutionally-adequate under the Fourteenth Amendment.  Perkins v. City of W. Covina, 113 F.3d 1004, 1011 (9th Cir. 1997) rev'd, 525 U.S. 234 (1999), and opinion withdrawn in part sub nom. Perkins ex rel. Perkins v. City of W. Covina, 167 F.3d 1286 (9th Cir. 1999) ("Perkins").  Under section 1540 of the California Penal Code, one can obtain the release of property wrongfully held "immediately after seizure" by moving in the appropriate criminal court for an order releasing the property.  Id. at 1011.

Defendants contend that because plaintiffs' had adequate post-deprivation remedies available to them, their Fourteenth Amendment claims necessarily fail.  But this misunderstands the nature of plaintiffs' claims.  Here, the Superior Court granted plaintiffs' motion for a return of their property, but plaintiffs allege that the sheriffs department refused, in a variety of ways, to comply with the court's order from the time when plaintiffs first brought it to their attention on August 10, 2010, until the firearms

and handgun retrieved from these bedrooms, and alleged taking of Cristina's jewelry.

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

were finally returned to them on March 27, 2011.  The lawfulness of the California post-deprivation process is based in part on the principle that "an officer seizing and holding property under a search warrant does so on behalf of the court; possession by the officer, is in contemplation of the law, possession by the court." Oziel v. Superior Court, 223 Cal. App. 3d 1284, 1292–93 (1990).  Therefore, if the deputies maintained possession of plaintiffs' property after a court order instructed the deputies not to do so, the deputies actions call into question the constitutional legitimacy of the post-deprivation process as applied in this case.  There is no reason to believe this principle applies with any less force in the context of warrantless probation searches.  Therefore, there the Court finds that remains a disputed issue of material fact as to whether defendants' alleged obfuscation and delay in returning plaintiffs' property amounts to a violation of the Due Process Clause of the Fourteenth Amendment.

### 4.    Conspiracy to Violate Constitutional Rights[8]

To prove a claim for a conspiracy to violate plaintiffs' constitutional rights, a plaintiff must "demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999 (quotation omimitted).  "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Id.  Each participant in the conspiracy need not know the precise details of the plan for liability to attach, "but each participant must at least share the common objective of the conspiracy." Crowe v. Cnty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc)).  "Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached  a understanding to achieve the conspiracy's objectives." Mendocino Envtl. Ctr., 192 F.3d at 1301–02 (quotation omitted).

---

[8] This claim is also brought under state law; defendants challenge plaintiffs' ability to prove the merits of their claim under either body of law, but the analysis is the same for both claims.

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|----------|------------------------|------|----------------|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

Defendants contend that plaintiffs offer "no evidence" in support of their conspiracy claim and that judgment in defendants' favor is appropriate. However, the Court finds that a reasonable jury could infer that there was an ongoing conspiracy among defendants to violate plaintiffs' constitutional rights.[9] Plaintiffs have not offered any direct evidence of a conspiracy, but the evidence in the record, taken in a light most favorable to them, supports an inference that defendants were engaged in a conspiracy to deprive plaintiffs' of their property, which persisted even after the Superior Court issued an order for the return of such property. Hector Jr. and Hector Sr. offer detailed declarations explaining how they were allegedly "ignored, avoided, and lied to about their valuables," and that defendants engaged in a sham review of the incident that served only to legitimize the deputies' conduct without any further investigation, including the detention of Hector Jr. See Opp'n at 6–7. A jury could infer the existence of a conspiracy from these facts.

Although other inferences are possible from the foregoing allegations, "[t]he possibility that other inferences could be drawn that would provide an alternate explanation for the [defendants'] actions does not entitle them to summary judgment" on the conspiracy claim. Mendocino Envtl. Ctr., 192 F.3d at 1303. Plaintiffs' testimony is sufficient to raise an inference that the deputies "share[d] the common objective of the conspiracy" to cover up their actions. Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002). Accordingly, the Court denies defendants' motion for summary judgment as to plaintiffs' claim for conspiracy under federal law.

---

[9] Defendants' reliance on Guyton v. Phillips is misplaced. 606 F.2d 248, 250 (9th Cir. 1979). This case stands for the proposition that "[a] 'deceased' is not a 'person' for the purposes of 42 U.S.C. §§ 1983 and 1985," and therefore a deceased individual has no claim for alleged violations "of the deceased's civil rights which occurred after his death." This case says nothing about whether a living person can maintain a conspiracy claim based on conduct that occurred after the initial search at issue here.

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

**B.     State Law Claims**

**1.     Compliance with the California Government Claims Act (Cal. Gov't Code §§ 910, 911.2, 945.4)**

The Court has already found that plaintiffs complied with the requirements of the California Government Claims Act ("GCA") with respect to their state law claims for damages, see Dkt. No. 25 at 10, and defendants offer no principled reason why the Court should revisit this conclusion on this motion. As the Court noted previously, plaintiffs' government claim "gives the LASD notice of all of the state causes of action filed in the complaint through reference in Hector Jr.'s 'Description of damages,'" which provided LASD "an ample opportunity to investigate and assess the validity of the claim." Id. Notice is the purpose of the GCA, not the elimination of meritorious claims. See Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 446 (2004). Plaintiffs' claim also "clearly indicates that Hector Jr. is filing the claims on behalf of his mother and father." Dkt. No. 25 at 10. Accordingly, the Court declines to depart from its prior ruling and again finds that plaintiffs gave adequate notice of their claims.

**2.     Immunity Under California Government Code §§ 821.6 and 815.2**

Defendants also renew their defense under California Government Code sections 821.6 and 815.2, which provide that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code §821.6.[10] Courts have interpreted this section to immunize government employees from liability where: "(1) the officers were employees of the County; (2) the plaintiffs' injuries were caused by acts committed by the officers to institute or prosecute a judicial or administrative proceeding; and (3) the conduct of the officers while

---

[10] Section 815.2 extends this immunity to a public entity for any "injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Paterson v. City of Los Angeles, 174 Cal. App. 4th 1393, 1404 (2009).

UNITED STATES DISTRICT COURT                    "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

instituting or prosecuting the proceeding was within the scope of their employment." Cnty. of Los Angeles v. Superior Court, 181 Cal. App. 4th 218, 228 (2009) (quotations and alterations omitted).  Although the California Supreme Court has not extended this immunity beyond claims of malicious prosecution, the Courts of Appeal have interpreted these immunities to apply broadly to any "actions taken in preparation for formal proceedings."  Amylou R. v. Cnty. of Riverside, 28 Cal. App. 4th 1205, 1209–10 (1994); see Tucker v. City of Richmond, Case No. 12-1829, 2012 WL 2571314, at *5 (N.D. Cal. July 2, 2012) (discussing the narrow versus broad view of the immunity afforded by section 821.6).  Under any interpretation, the immunity granted by section 821.6, "as it applies to police conduct, is limited to actions taken in the course or as a consequence of an investigation."  Blankenhorn v. City of Orange, 485 F.3d 463, 488 (9th Cir. 2007).

Even if the Court accepts the broad view of section 821.6 immunity, there are disputed issues of material fact as to the lawfulness of the deputies' probation compliance search, assuming this is a form of "investigation" for which immunity may be granted.  Therefore, the Court finds that further resolution of the factual disputes identified herein is required before finally adjudicating the defendants' claim to immunity under section 821.6 and 815.2.

**3.    False Imprisonment**

"The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief."  Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485, 496 (2000).  According to Hector Jr., he was detained in the patrol car for over two hours without his consent.  The question remains as to whether the officers had lawful privilege to do so.  Defendants offer two arguments as to why Hector Jr.'s detention was lawful.

First, defendants contend that the detention was lawful under California Penal Code § 847(b)(1), which provides that "[t]here shall be no civil liability on the part of . . . any peace officer . . . acting within the scope of his or her authority, for false arrest or false imprisonment" arising out of an arrest that "the peace officer, at the time of the arrest, had reasonable cause to believe . . . was lawful."  However, the deputies would

UNITED STATES DISTRICT COURT     "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

not have had "reasonable cause" to believe that the detention was lawful if in fact the reason for the detention was to retaliate for Hector Jr.'s exercise of his First Amendment rights. Because the Court has determined that disputed issues of material fact preclude awarding judgment in defendants' favor on Hector Jr.'s claim of retaliation under the First Amendment, defendants' motion for summary judgment under Penal Code section 847(b)(1) is also denied.

Second, defendants maintain that they are immune from suit by reason of Civil Code § 43.55. This section extends immunity to "any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face," so long as the officer "in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant." Id. Given the conflicting testimony in the record as to why Hector Jr. was taken to the patrol car, see Depo. of Deputy Reyes 99:11–18, 151:22–152:23, when the deputies actually performed a search for warrants in Hector Jr.'s name, and whether there was in fact an "in county" or "out of county" warrant for Hector Jr. that the deputies acted on, see Depo. of Deputy Fernandez at 50:12–51:3, the Court cannot resolve the issue of section 43.55 immunity on this motion. See, e.g., Gant v. Cnty. of Los Angeles, 765 F. Supp. 2d 1238, 1264 (C.D. Cal. 2011) (finding that disputed issues of material fact precluded summary judgment on the issue of immunity under section 43.55).

### 4. Conversion / Intentional Infliction of Emotional Distress

Defendants argue that plaintiffs' conversion claim must be summarily adjudicated in their favor because plaintiffs have "absolutely no evidence" that deputies took jewelry from their home. Cristina testifies that after the deputies left, she allegedly discovered that her sapphire necklace, earrings, and ring, black amethyst ring and earrings, and pearl earrings and ring were missing. Cristina Decl. ¶ 32. She then looked for the rest of her gold jewelry, which was also missing. Id. ¶ 33. Some of this jewelry was stored in a shoebox, which a number of witnesses testify they saw the deputies take to their patrol car. Hector Jr. thought that the deputies may have taken the jewelry to determine if it was stolen, but the deputies deny that any jewelry was removed from the house. Because these material facts are disputed and the Court may not make credibility determinations

UNITED STATES DISTRICT COURT      "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

at this stage of the proceeding, the Court denies defendants' motion for summary judgment on plaintiffs' conversion claim.

The Court also denies defendants' motion for summary judgment on plaintiffs' IIED claim. The Court cannot decide as a matter of law that defendants "acted reasonably" and lawfully, as they contend, during a lawful probation compliance search; these material facts remain to be adjudicated at trial. Accordingly, defendants' motion is denied as to this claim.

### C.    Claims Against Captain Matt Dendo

The Court separately addresses Captain Dendo's motion for summary judgment as to all claims asserted against him. Plaintiffs contend that Dendo may be held liable as the "supervisor and LASD executive" overseeing the actions of his subordinates at the Lennox station. For claims of supervisory liability under section 1983, supervisors are not subject to vicarious liability or respondeat superior, but are liable only for their own conduct. Jeffers v. Gomez, 267 F.3d 895, 9915 (9th Cir. 2001). A defendant may be liable as a "supervisor" under section 1983 where "there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr, 652 F.3d at 1207 (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).

For example, a plaintiff may seek to hold a supervisor liable "for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). Alternatively, a supervisor may be held liable "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1208 (quotation omitted). To prove that a supervisor was personally involved in a constitutional deprivation, there must be evidence of the supervisor's "integral participation" or "fundamental involvement" in the offending conduct that led to the violation. See Torres v. City of Los Angeles, 548 F.3d 1197, 1206 (9th Cir. 2008); Blankenhorn v. City of Orange, 485 F.3d 463, 481, n. 12 (9th Cir. 2007).

UNITED STATES DISTRICT COURT        "O"
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-7589-CAS (PLAx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | CRISTINA GUTIERREZ, ET AL. V. COUNTY OF LOS ANGELES, ET AL. | | |

Plaintiffs do not contend that Captain Dendo is personally responsible for the conduct of the deputies at the search itself; there is no dispute that he was not present at the search or was otherwise directing the conduct of the deputies on the scene. Dendo testifies that he had no personal involvement in the alleged constitutional violations—whether the traffic stop, search of the residence, or return of any seized property. Decl. of Capt. Dendo ¶¶ 7–9. In response, plaintiffs argue that Dendo approved at least two letters bearing his signature during the post-search review process, one related to the investigation of the search and alleged theft of the jewelry, another pertaining to the handling of the Superior Court order for the return of property. See Depo. of Capt. Dendo at 150:6–151:13; 152:3–7 (Q: "[A]t the time that this issue of the return of property was raised by the Gutierrez family, you obviously had your hand in it in some part; correct? A: Yes.").

Viewing the facts in the light most favorable to plaintiffs, there remains disputed issues of material fact as to whether Dendo is liable to plaintiffs on their federal claims. In particular, the Court cannot determine, based on the record before it, whether Captain Dendo had some involvement in and direct oversight of the alleged actions of his subordinates in failing to properly investigate the plaintiffs' complaints of theft after the search, as well as failing to timely return plaintiffs' property. Although Dendo bears no liability for the search itself, a rational jury could find that Dendo is liable for Fourth and Fourteenth Amendment violations arising out of the alleged theft of their jewelry, as well as Fourteenth Amendment violations arising out of the failure to return Hector Sr.'s firearms in a timely fashion. Accordingly, defendant Dendo's motion for summary judgment as to the claims asserted against him is denied.

**V.  CONCLUSION**

In accordance with the foregoing, defendants' motion for summary judgment is GRANTED in part and DENIED in part, as noted herein.

IT IS SO ORDERED.

| | 00 | : | 03 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |